Good morning, Your Honors. May it please the Court, my name is Stephanie Barclay, and I'm appearing as appointed counsel on behalf of Plaintiff Appellant Treandous Cotton. I'd like to reserve two minutes of time for rebuttal. I plan to first explain why the District Court's grant of summary judgment on Mr. Cotton's, particularly on his Arlupa claim, was erroneous notwithstanding this Court's recent order granting the motion to strike. I plan to then address this Court's question about damages under the Arlupa statute. Turning to the District Court's grant of summary judgment, particularly on Mr. Cotton's Arlupa claim, the lower court's holding is inconsistent with this Court's precedent for at least two reasons. First, under Arlupa, the prison is required to demonstrate, through specific evidence indicating a serious good-faith analysis, that its denial of a prisoner's free exercise was the least restrictive means of furthering a compelling government interest. The District Court erroneously shifted this burden from the prison to Mr. Cotton to prove how the prison could accommodate his religious practices, even though the court had denied him any means of even attempting to accomplish that task. Second, defendant's least restrictive analysis in this case was wholly inadequate. The prison latched on to one suggestion from a pro se inmate and used this as an excuse to ignore a number of other readily available alternatives on the record before the District Court. Well, the one alternative which is clearly cost prohibitive is sending a correctional officer 50 miles round trip to the Whole Foods store in Monterey. So abiding by the Court's order with regard to the motion to strike, what other alternatives were offered or what other alternatives was the warden obligated to pursue in considering the specialized diet he was requesting? So I'll discuss three of those alternatives, Your Honor. The first is that Mr. Cotton, after he had been denied the opportunity to make any phone calls to do his own research or to be appointed by counsel, he brought to the Court's attention the fact that if somebody was willing to call his religious leader, the Temple of Shatot Natur, that that religious leader would be willing to provide the court with and the prison with phone numbers of 50 people. So he brought to the Court's attention that if somebody was willing to call his religious leader, the Temple of Shatot Natur, that that religious leader would be willing to provide the court with and the prison with phone numbers of 50 people. And so in the Court's instructions to the prison for the renewed motion of summary judgment, the Court said that they needed to investigate suppliers and seek price bids. They did that, did they not? They talked to the approved wholesale food suppliers for the entire prison system to find out whether or not they could supply all the foods he needed, but determined that what they had was inadequate to provide him with a fully balanced nutritional meal. Is that right? We do have one conclusory sentence in the record, Your Honor, where they said our current vendors offer the type of food necessary for defendant's diet, but it's not sufficient for the breadth of a balanced diet. But this Court So the answer to my question is yes. It's not a hostile question. I'm just trying to make sure I understand the record. The answer is no, that's not sufficient exploration under the least restrictive analysis, Your Honor. In fact, this Court I guess what I want to know is what evidence did he offer that that wasn't true, that the existing cleared vendors would not be able to supply him with all the food items that were needed for a fully balanced diet? Well, I think the appropriate question is, was that evidence enough to be so persuasive that any reasonable jury would fine for the prison based on that sentence? Well, the question is, is there a contested issue of material fact? And the source of the declaration is a certified nutritionist who is, I assume, or at least I didn't see any suggestion that he wasn't capable of making a determination  as to what foods would constitute a balanced diet, who says, I made those inquiries and my conclusion was that I couldn't get all the foods that he needed from our cleared sources of supply. Did Mr. Cotton offer any evidence to dispute that statement of fact from an authorized declarant? The evidence that he did offer that is relevant under Ashelman, Your Honor, is he offered evidence that under his current diet, he's not currently receiving nutrition necessary for his diet. On ER 191, where you should be open right now, he said in paragraph 29 that right now he is, quote, not receiving a sufficiently nutritious diet. And he also He's gained a lot of weight, hasn't he? Well, at summary judgment stage, Your Honor, that's merely a contested issue of fact. They've presented some evidence where they would argue, indicate, so he does have a sufficient diet. He's offered his own evidence indicating he does not have a sufficient diet. And at summary judgment, we have to view A medical term or a religious term in this context? Both. He is saying I'm not receiving a sufficient religious diet, and I'm also not receiving a sufficient medical diet. But let me talk real quick about whether or not this nutritional justification is enough. Under Ashelman, the court said, quote, while nutrition concerns are legitimate, there is no evidence that they are greater with the diet Ashelman proposes than with the diet he has been provided, which he could not eat, end quote. And that's at page 678. Ms. Buckley, the concern, the thrust of my question has to do with whether or not there is a feasible alternative similar to whole foods but cheaper that could have been found in order to make up the fully balanced diet. I mean, all I have before me on a summary judgment record is the statement from the nutritionist that I inquired with regard to our approved vendors, and they can't do that. So I guess your position is they needed to do more than that. They needed to determine what additional foods could be procured and from what sources and at what cost? That is essentially my position, Your Honor. The prison was required to do more than merely prove infeasible one of multiple suggestions from the prisoner. They were required to engage in their own analysis of options available. But let's turn to the other option that Mr. Cotton suggested that they never explored. He wanted the court to contact his religious counselor. That's right. And on page ER192, he has provided a phone number and said since Well, stop a thing. You've worked with the court. Is the district judge in the business of going out and collecting evidence for a party? Under War Soldier, Your Honor, if a plaintiff offers a suggestion, this court said that at the very least, what the least restrictive analysis requires is that the prison prove that that alternative is infeasible. It says, quote, prison officials must set forth detailed evidence tailored to the situation before the court that identifies the failings in the alternative advanced by the prisoner. It wouldn't have been hard for the prison to explore this alternative and determine whether or not they could identify the failings in that alternative advanced by the prisoner. And remember, he was willing to pick up the phone and call himself, but that option was denied him. And so he told the prison, if you call this phone number, you'll receive my religious leader who will provide you with a list of distributors that you could explore that would be cheaper than Whole Foods. Probably. And he also pointed out he was surprised that the prison had limited their analysis to Whole Foods. It's not a registered vendor. It's not capable of delivering. The problem, as I understand it from the record, is that the state has a statewide system trying to provide food to 31 prisons holding nearly 200,000 inmates. And it takes a long time to clear the big wholesale food companies who are authorized to deliver. So isn't the prison going to run into the same problem with whatever source the religious leader supplies? Well, Your Honor, the court rejected that in Ashelman, when the only reason that we're not getting food from the current sources is because of dietary restrictions, number one. But number two, it's possible that they might be able to provide, say, 90% of his diet under what their current food distributors are offering, and then they'd only need to supplement with very small sources of food from outside vendors. We just don't know if that's even an option, and so there's a question of fact on that issue as well. Number three, on the record, Mr. Marino did mention that Whole Foods was one of a number of limited suppliers that could accommodate the diet. So even before the district court, there's evidence that they were aware of other options, and they didn't explore them. And so the important thing is, Your Honor, that this court has ‑‑ I see that I'm over my time. You can finish your statement. The important thing is? This court has made clear that at the very least, under least restrictive analysis, a prison has to explore those alternatives set forth by the inmate. And that's a bare minimum, not a ceiling. But by affirming the district court, we would turn that into a ceiling and turn least restrictive analysis on its head, Your Honors. All right. Thank you very much, Ms. Barkley. Let's hear from the warden. I guess technically, Mr. Feudale, you're representing the director of the Department of Corrections. Is that it? That is correct, Your Honor, yes. Although he's out of the case. Correct. All right. May it please the Court, Deputy Attorney General Scott Feudale appearing on behalf of Defendants at Police. This case tests the outer limits of how far State prison officials must go in attempting to accommodate an inmate's religious dietary. Never before has this court, nor any of its sister circuits, required a State to spend so much money and exhaust so many resources to accommodate an inmate's request for a raw, organic. When you say so much money, is that tied to the particular calculation for the Whole Foods alternative? Well, it is tied to the Whole Foods. So what about other alternatives? I mean, I don't hear a serious argument that the State's compelled to spend the amount of money that's calculated for Whole Foods. I think the argument you just heard is focused on the allegation that the State failed to investigate more reasonable alternatives. What do we know about other alternatives? Your Honor, the State did investigate the resisting food vendors. That's clear from the record. The Food Administrator found that they didn't have a sufficient line of organic foods to maintain a balanced diet. So those were two alternatives to their current system of providing a vegetarian diet. I think that's sufficient under RLUIPA. Indeed, the inmate did not offer any alternatives until his opposition on summary judgment, and didn't really give anything other than, you could have called these people, other than saying, you know, this particular vendor can deliver. Okay, how about that one? He did in his paper to the court, and he's a prisoner. He's somewhat more limited in what he can offer up. He can't do investigation himself. He says, call my spiritual leader or counselor, and here's the phone number, and he'll be able to identify local sources. Anybody follow up on that? That's not clear. I don't believe that happened in the record, Your Honor. But I think that that is not why. Why couldn't the State be asked to follow up on that? I mean, they've offered Whole Foods as an alternative. It's easy to identify and understand that. If they're told, look, you don't have to go to Monterey. There are things more accessible that are more cost reasonable. Why shouldn't the State look into those alternatives? Well, that's the thing, Your Honor. There's no evidence in the record that they were more efficient or are reasonable alternatives. There was just a suggestion to contact a temple leader. Indeed, this diet is very restrictive. I mean, the inmate requests a raw, organic, vegan, non-genetically modified, non-irradiated diet. It's unlikely that this leader would be able to find a vendor to deliver to a prison, which isn't a real problem. Is there anything in the record that suggests that request isn't tied to the set of beliefs incumbent in this religion? Because if there isn't, then presumably the spiritual leader is following that kind of diet himself and would, for his own needs, have to find a vendor more accessible than driving to Monterey every week. Well, I mean, there is evidence in the record from the spiritual leader himself that the diet is somewhat flexible when it comes to inmates, that religion recognizes that they may not be able to obtain the optimal diet due to the, you know, inherent restrictions of incarceration. So I don't necessarily know if it substantially burdens Mr. Cotton in this instance, given the statement from that same religious leader. Yeah, but you're not suggesting that that statement from the leader of the religion is sort of waiving the belief of the religion. All he's saying is that in the reality of prisons, you know, it's probably unlikely that one of our adherents will be able to get the foods that he needs because the prison simply isn't going to supply them. Well, I think what this statement is saying, Your Honor, is that the religion recognizes there are limitations to, in this case, incarceration, and that that won't necessarily interfere with their spiritual well-being. Right. And the religion recognizes those exceptions. I'm not saying it's a wholesale exception, but that not necessarily the inmate needs to be accommodated precisely. I don't even know if this is a term that applies, but we're not going to excommunicate him because he's not eating the diet that we think he should be eating. That would be a fair statement, yes. All right. Why couldn't the nutritionist just pick up the phone and call the temple and say, you know, what are your local food sources in the Salinas Valley for these foods that we need? Well, I think that that statement, that suggestion from the inmate came, you know, in opposition to a summary judgment motion. It was never suggested before on the record. They never, you know, had the opportunity to make that investigation. And, indeed, Anderson holds that it's his obligation. Be careful with that argument. In summary judgment, does this raise the possibility, given in particular that it's a pro se prisoner whose investigative capacity is pretty limited, if he tells the court, as he does, look, there's this easy alternative, find out what's there, and the State hasn't done that, and the State doesn't say that it's done that, why doesn't that raise at least a question as to whether there are reasonable alternatives available to the State? Well, Your Honor, there's nothing in the record to suggest that that was a reasonable alternative or a less restrictive alternative. But what is there that says that it's not? If the State doesn't investigate and we're on summary judgment, admittedly, it's a half-baked suggestion on summary judgment. But this is an incarcerated prisoner who's not really free to offer up very much. It could be argued that, well, he's in contact with his spiritual leader. He could find some of that information out itself. But this is just kind of sitting there, and it doesn't appear that the State did anything to investigate, nor do I see anything that says why it's unreasonable that at least pick up the phone and call and see if there's a local source closer than Whole Foods and Monterey. Well, I think, Your Honor, the reason why is the State met its burden ahead of time. The State tried two less restrictive alternatives. They tried using the resisting food vendors. They tried Whole Foods. There was no suggestion up until that point that there was any other alternative. The inmate kind of put the ---- Well, I think what the record shows is that they denied his request initially, and I'm not sure what the extent of the ---- It does talk about the, you know, there's an administrative appeal there, and the record shows that the ---- Well, I guess what I'm asking, the reason I cautioned you about pushing your argument too far a little earlier was what's good for the goose is good for the gander here. There's an awful lot in the nutritionist affidavit that appears to be a good idea. And in response to the litigation, not before the decision was made to say, no, we're not going to accommodate your dietary request. And I'm looking at our case law like Green v. Solano County and War Soldier. I'll give you a site, 513 F. 3rd, 982, at 989, where we say that you must show that you actually considered and rejected the efficacy of less restrictive measures before adopting the challenge practice. Well, I do. I do, and that is the law, Your Honor. And I think the court, the prison administrators did that with respect, maybe not to the whole food suggestion. I think that might have taken place during the course of litigation. But there is evidence in the record, if you look at the administrative appeals, that they consider their existing food programs and whether they can accommodate the inmates, such as putting them on the kosher meal program. That was done. But that's really what's in this lawsuit. Is there any authority that says it's enough to call your existing vendors to see if they can meet the request? Well, I think that that, you know, War Soldier talks about using the efficacy or shooting down the efficacy of reasonable alternatives, and that was a reasonable alternative the court considered. I mean, I'm sorry. Well, it was a reasonable alternative. Is it the only reasonable alternative? I mean, suppose you've got a prison that operates entirely with one supplier. Is it enough to call that supplier? Would it satisfy the prison's obligation not to inquire as to any other supplier? I'm not saying this is your fact, but at some point, the duty to inquire would seem to be beyond talking to the one guy that you've already dealt with. Well, yes, Your Honor. The record does show there's at least four food suppliers. That's from the declaration of the food administrator. So presumably all of them were contacted, or at least the food administrator was knowledgeable about their food lines. And really, I mean, the case law isn't clear that, you know, there is reasonable alternatives need to be considered. That is clear. How many different reasonable alternatives until it's possibly exhausted is not clear. The problem is, if a prison is, you know, required to think and conjure up every possible alternative, there's always the potential on appeal with the aid of counsel that an additional alternative could be mentioned, or even, you know, before the district judge, well after the prison has satisfied their duty under RLUIPA. So it kind of creates a sandbagging effort. The inmate can, you know, just kind of sit back, wait, and then as soon as the prison's, you know, it's his opportunity to post summary judgment, come up with a whole list of alternatives. But is it your position that it takes so long to qualify a vetted vendor that even if the religious leader at the temple had said, yeah, you can go down to Joe's Farmer's Market in Salinas and get everything you need, the prison wouldn't necessarily have allowed Joe to come out and make deliveries to the Salinas Valley Prison, would it? Well, that's true, Your Honor. There is, you know, security concerns. They have to be vetted, you know, so they're not bringing weapons into the prison. There's also food safety concerns to make sure they properly irradiate their food or make sure they handle it properly. He doesn't want irradiated food. Right. Correct. Right. So that would be off the table. You've got to run the risk of the GI infection. Right. That would. You know, I see my time is almost up. I just wanted to hit one point, and that is whether damages are available under RLUIPA. I invite this Court to follow the decisions of the 2nd, 3rd, 4th, 5th, 7th, 10th, and 11th circuits in finding that RLUIPA does not allow for damages for individuals sued in their individual capacity, and the reason for this is that the individuals are not the grant recipients of the spending, you know, the contract formed under the spending clause. The grant recipient is the state, and only the state should be held liable under RLUIPA, not the individual defendants. So unless the Court has any further questions, I'll submit it. Thank you very much. Thank you. Ms. Barkley, you did burn up all your time, but I'm going to give you a minute in rebuttal, and could you address in particular the damages question? I'm sorry. Sure. Thank you, Your Honor. Let me begin with the damages question. I'd first like to bring this Court's attention that there is a case currently pending before the Court. It's called Wood v. Yorty that was argued in October of last year. What's the name of the case? Wood v. Yorty. And that case is specifically addressing the issue of damages against officials in their individual capacity. And unlike this case where Mr. Cotton still has live injunctive and declaratory relief requests for a remedy, and so his case does not rise or fall in damages, in Wood v. Yorty he has all of the above. Right. The question is can he get individual damages? And I will address that, Your Honor. I just meant to point out even if he doesn't get damages, there's still a live case on his injunctive and equitable relief. I wasn't suggesting that the case was moved, but I do agree with your opponent's statement of where the other circuits stand. Yes. Why should we create a split is really what I'm asking, and invite the Supreme Court to reverse this. Two answers to that, Your Honor. First of all, this Court can avoid a split by ruling that damages are available under the Commerce Clause, because in all of the circuits that address this issue, they either reserved the Commerce Clause question or found that it had not been properly brought before it or that the facts of the case did not indicate commerce. For example, something like ---- Do you agree, then, that it's not available under the spending system,  I would not agree, Your Honor, simply because we already have precedent to the extent we're worried about a circuit split. We have one case that is being discussed, and that would be already a case that Your Honors can go to, is City of Yuma. And that is not something that's in my brief, and so I can provide Your Honors with binders of some additional cases that are relevant. I've served one on counsel, but ---- I guess the question is there is not a split now on the spending clause, but there would be if we adopted your theory under the spending clause. The holding that we have right now in City of Yuma, Your Honor, that is 651 F3rd 1163. We allow damages against an entity even though there was no dispute that that ---- there was no argument that that entity was receiving federal funding. And so that goes against ---- Entity or individual? The question is individual. It was a municipality, but I would argue that's a difference ---- a distinction without a legal difference, because ---- There's a distinction without a legal difference between individuals and a municipal entity? Because the important issue is are we in the sovereign immunity context or are we not? No, this is just a question of whether damages may be recovered under the statute where Congress has not expressly provided for that. I would like to point out, Your Honor, I think the better way to get to damages in this case is under the Commerce Clause, which would avoid any kind of circuit split. And one case where the Court was able to come to that conclusion was in Atkinson, the Western District of Michigan. That's 2009 Westlaw 4042756. And the Court in that case explained that because the activity at issue, facially commercial activity like at issue here of purchasing food from vendors and using special vendors, the Commerce Clause could provide the alternative justification for ARLUPA, which Congress clearly intended under the text of ARLUPA that the Commerce Clause be an alternative constitutional basis. I'd like to just ---- Mr. Barkley, you are way over your time. Yes. One thing. You've identified a case that was argued in October. Is it your point that that case has priority with regard to this issue of damages being available? My point is just merely I know that we have a duty to let this Court know about related cases. Do you happen to have the case number for that case? I do, Your Honor. Either now or later if you could provide it because that would give us something to look out for. It's 12-35336. 35336? That's correct, Your Honor. Thank you. Thank you very much, Ms. Barkley. The case just argued is submitted. Thank you both for a very helpful argument.
judges: Duffy, Tallman, Clifton